UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

THE STANDARD FIRE INSURANCE COMPANY,

                Plaintiff,

    v.

CAROLYN LANGE, *et al.*,

                Defendants.

Case No. C20-92 JLR-MLP

REPORT AND RECOMMENDATION

## I.    INTRODUCTION

This matter is before the Court on The Standard Fire Insurance Company's ("Travelers" or "Plaintiff") motion for summary judgment regarding whether it owes a duty to defend or indemnify Defendants Carolyn and Benjamin Lange (the "Langes" or "Defendants") for claims asserted against them in an action in Whatcom County Superior Court, *C.L. v. Carolyn and Benjamin Lange*, Whatcom County Superior Court Case No. 17-2-02207-8 (the "Underlying Action"). (Mot. (Dkt. # 17).) Defendants opposed the motion (Resp. (dkt. # 26)) and Plaintiff filed a reply (Reply (dkt. # 28)). Defendants also filed supplemental evidence via a praecipe in support of their opposition to Plaintiff's motion. (Praecipe (Dkt. # 30).) The Court heard oral argument on September 14, 2020. (Dkt. # 34.) Having considered the parties' submissions, oral

REPORT AND RECOMMENDATION - 1

argument, the balance of the record, and the governing law, the Court recommends that Plaintiff's motion for summary judgment be GRANTED, as explained below.

## II.  BACKGROUND

### A.  Underlying Action

In the Underlying Action, the Langes' adoptive daughter, C.L., alleges sexual, emotional, and physical abuse by the Langes. (Tokuyama Decl. (Dkt. # 19), Ex. A (Underlying Action Compl.) at ¶ 3.11.) The Langes began fostering C.L. in 2002 and subsequently adopted her and her sister on August 24, 2004. (*Id.* at ¶¶ 3.6-3.7, 3.9.)[1] C.L. alleges that during her time in the Lange household, she was subjected to repeated sexual abuse by two of the Langes' biological sons, Dillon and Colten. (Neal Decl., Ex. 1 at 4-5.) In a related criminal matter, both Dillon and Colten pleaded guilty to charges relating to the sexual abuse of C.L. (*Id.*, Exs. 5, 6, 8, 9.) Dillon's guilty plea relates to sexual contact with C.L. on or about November 17, 2003 to November 16, 2008 (*id.*, Ex. 6 at 1) and Colten's guilty pleas relate to sexual contact with C.L. on or about July 23, 2007, December 23, 2007, and June 10, 2008 (*id.*, Ex. 9 at 1).

C.L. alleges Carolyn Lange physically and mentally abused her, including striking her with physical objects and withholding food for multiple days. (Neal Decl., Ex. 1 at 8, Ex. 2 at 5-10; Carr Decl. (Dkt. # 27), Ex. A at 25-26.) Specifically, C.L. alleges Carolyn Lange forced her to pull down her pants and grab her ankles while Carolyn Lange struck her with various items including a leather belt and a metal kitchen ladle. (Neal Decl., Ex. 2 at 4-10.) C.L. also alleges Carolyn Lange engaged in other abusive conduct, such as refusing to believe C.L.'s disclosure of sexual abuse by Dillon and Colten and by throwing C.L.'s belongings in garbage bags after she

---

[1] C.L. was born in 1996 and therefore was approximately six to nine years old during the relevant policy period. (Neal Decl. (Dkt. # 18), Ex. 1 at 3.) The Underlying Complaint states C.L. was adopted in 2014, however, this appears to be an error. *See C.L. v. Dep't of Soc. & Health Servs.*, 200 Wn. App. 189 (2017).

moved out as a teenager. (*Id.*, Ex. 1 at 7-8.) C.L. further alleges Benjamin Lange touched her breasts while she slept and failed to protect her from Carolyn Lange's abuse. (Second Neal Decl., (Dkt. # 29), Ex. A at 8-9.) C.L. also alleges that prior to her foster care placement with the Langes, they were aware that Dillon was previously accused of sexually abusing a cousin but failed to disclose this information to the Washington Department of Social and Health Services ("DSHS") on their foster care application and during the adoption process. (Underlying Action Compl. at ¶ 3.3.)

### B. Procedural Background

C.L. sued DSHS alleging it failed to properly investigate the Langes before placing her in their home. *See C.L. v. Dep't of Soc. & Health Servs.*, 200 Wn. App. 189 (2017) ("DSHS Action"). In that action, C.L. received $4 million in damages based on DSHS's failure to review its records that showed Dillon was previously reported to DSHS for alleged sexual misconduct. *Id.*

On November 13, 2017, C.L. filed the Underlying Action against the Langes in Whatcom County Superior Court. (*See generally* Underlying Action Compl.) As discussed above, C.L. alleges the Langes abused her and failed to disclose the sexual abuse allegations against Dillon to DSHS. (*Id.* at ¶¶ 3.3, 3.11.) C.L. also alleges the Langes: (1) had a duty to protect and care for C.L.; (2) had a duty of reasonable care to C.L.; (4) were negligent in their actions and/or omissions relating to C.L.; (5) engaged in willful and wanton conduct relating to C.L.; (6) negligently inflicted emotional distress; (7) are liable for outrage; and (8) breached their duties of care to C.L. (*Id.* at ¶¶ 4.1-4.8.) C.L. alleges the Langes' negligence and/or other tortious conduct began in 2002 and lasted through at least 2016. (*Id.* at ¶ 4.7.)

In the Underlying Action, the Langes moved for summary judgment, asserting C.L. was

collaterally estopped from bringing her action because her sexual abuse claims regarding Dillon and Colten were already resolved in the DSHS Action. (Carr Decl., Ex. E (Order Regarding Summary Judgment and DSHS Verdict) at 2-3.) The court dismissed C.L.'s claims for damages resulting from the sexual abuse, finding C.L. has already been compensated for those injuries. (*Id.*) However, the court found C.L.'s claims that the Langes abused her are independent from the sexual abuse claims and therefore are properly before the court. (*Id.*)

The court in the Underlying Action held a hearing to address C.L.'s motion for reconsideration of the summary judgment order. (Praecipe.) During the hearing, the court confirmed that any damages resulting from the sexual abuse of Dillon and Colten are excluded from the matter. (Dkt. # 31, Ex. A (Transcript of 7/10/2020 State Court Reconsideration) at 3.)[2] However, the court stated it did not previously know that C.L. was unaware her adoptive parents made alleged misrepresentations and omissions to DSHS in the course of the foster care and adoption process regarding Dillon's prior alleged sexual assault. (*Id.*) The court clarified that to the extent that knowledge caused C.L. emotional distress, damages may be recoverable. (*Id.*)

### C. Relevant Insurance Policies Terms

Travelers issued three homeowners insurance policies to the Langes from January 1, 2002 to January 1, 2005, that provided the same pertinent terms (hereinafter the "Policies"). (*See* Compl. (Dkt. # 1) at ¶ 4.1; Tokuyama Decl., Exs. C, D, E.) On January 30, 2018, the Langes tendered the Underlying Action to Travelers. (Tokuyama Decl. at ¶ 3.) Travelers agreed to defend the Langes with an express reservation of rights. (*Id.*, Ex. B.) Travelers thereafter filed the instant action for declaratory relief, asserting that the Policies do not cover the claims in the Underlying Action because the Policies do not cover "bodily injury" (1) "arising out of sexual

---

[2] The copy of the transcript states the hearing was held on July 7, 2020, however, it was actually held on July 10, 2020. (Dkt. # 31.)

molestation, corporal punishment or physical or mental abuse"; (2) that is sustained by an "insured"; (3) that is expected or intended by "one or more insureds"; and (4) that is not caused by an "occurrence." (Mot. at 14.)

The Policies provide the following provisions regarding personal liability, in relevant part:

> If a claim is made or a suit is brought against any **insured** for damages because of, **bodily injury**, **property damage** or **personal injury** caused by an **occurrence** to which this coverage applies, we will:
>
> **a.** Pay up to our limit of liability for the damages for which the **insured** is legally liable. Damages include prejudgment interest awarded against the **insured**; and
>
> **b.** Provide a defense at our expense by counsel of our choice, even if the suit is groundless, false or fraudulent. We may investigate and settle any claim or suit that we decide is appropriate. Our duty to settle or defend ends when our limit of liability for this coverage has been exhausted by payment of judgments or settlements.

(Tokuyama Decl., Ex. E at 8, 29 (emphasis in original).) The Policies also provide the following exclusion terms:

> **1. Coverage E – Personal Liability and Coverage F – Medical Payments to Others** do not apply to **bodily injury** or **property damage:**
>
> **a.** Which is expected or intended by one or more **insureds**;
>
> **j.** Arising out of sexual molestation, corporal punishment or physical or mental abuse;
>
> **2. Coverage E – Personal Liability**, does not apply to:
>
> **f. Bodily Injury** to you or an insured within the meaning of Part **a.** or **b.** of **insured** as defined.

(*Id.*, Ex. E at 29, 31 (emphasis in original).) The Policies further provide the following definitions:

> **2. Bodily Injury** means bodily harm, sickness or disease, except a disease which is transmitted by an **insured** through sexual contact. **Bodily injury** includes required

REPORT AND RECOMMENDATION - 5

care, loss of services and death resulting from covered bodily harm, sickness or disease.

**5. Insured** means you and residents of your household who are:
    **a.** Your relatives; or
    **b.** Other persons under the age of 21 and in the care of any person named above.

**7. Occurrence** means:
    **a.** An accident, including continuous or repeated exposure to substantially the same general harmful conditions, which results in **bodily injury** or **property damage** during the policy period; or
    **b.** An offense, including a series of related offenses, committed during the policy period, that results in **personal injury.**

**8. Property damage** means physical injury to, destruction of, or loss of use of tangible property.

**12. Personal injury** means injury arising out of one or more of the following offenses:
    **a.** False arrest, detention or imprisonment, or malicious prosecution;
    **b.** Libel, slander or defamation of character; or
    **c.** Invasion of privacy, wrongful eviction or wrongful entry.

(*Id.*, Ex. E at 7, 16-17 (emphasis in original).)

### III.    DISCUSSION

#### A.    Summary Judgment Standard

Summary judgment is appropriate if the evidence, when viewed in the light most favorable to the non-moving party, demonstrates there is no genuine issue of material fact. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986). The moving party bears the initial burden of showing there is no material factual dispute and he or she is entitled to prevail as a matter of law. *Celotex Corp.*, 477 U.S. at 323. The moving party is not required to dispel all doubt as to all facts—rather, they must only demonstrate that there are "no *genuine* issue[s] of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). If the moving party meets its burden, the opposing party must present evidence to support its claim or defense. *Cline*

*v. Indust. Maint. Eng'g. & Contracting Co.,* 200 F.3d 1223, 1229 (9th Cir. 2000). The granting of declaratory judgment actions, such as the instant matter, is proper when there are purely legal questions at issue and if the judgment will clarify the legal issues and provide clarity to the parties. *Natural Res. Def. Council, Inc. v. EPA,* 966 F.2d 1292, 1299 (9th Cir. 1992).

### B.     Insurance Policy Interpretation

The Court construes an insurance policy as a contract, and the interpretation of that contract is a question of law. *State Farm General Ins. Co. v. Emerson*, 102 Wn.2d 477, 480 (1984). Policies must be construed as a whole and the terms within "given a 'fair, reasonable, and sensible construction as would be given to the contract by the average person purchasing insurance.'" *Weyerhaeuser Co. v. Commercial Union Ins. Co.*, 142 Wn.2d 654, 666 (2000) (quoted sources omitted). The court is bound by definitions provided in the policy. *Austl. Unlimited, Inc. v. Hartford Cas. Ins. Co.*, 147 Wn. App. 758, 766 (2008) (citing *Overton v. Consol. Ins. Co*., 145 Wn.2d 417, 427 (2002)). Undefined terms in a policy are interpreted by courts based on their ordinary meaning. *Boeing Co. v. Aetna Cas. & Sur. Co.,* 113 Wn.2d 869, 877 (1990). If a term in a policy is undefined, courts may look to the dictionary to determine the common meaning. *Id.*; *see also Kish v. Insurance Co. of North America,* 125 Wn.2d 164, 171 (1994) (looking to the dictionary to define "flood" as used in an exclusionary clause). Where the language is clear, the court must enforce the policy as written and may not create ambiguity where none exists. *Quadrant Corp. v. Am. States Ins. Co.*, 154 Wn.2d 165, 171 (2005). A clause is only considered ambiguous if it is susceptible to two or more reasonable interpretations, and any ambiguity is resolved in favor of the insured. *Id.*

The insured has the initial burden to show the insurance policy covers its loss. *Overton*, 145 Wn.2d at 431 (citing *McDonald v. State Farm Fire & Cas. Co.,* 119 Wn.2d 724, 731

(1992)). Thereafter, to avoid coverage, the insurer must prove that specific policy language excludes the insured's loss. *Id.*

### C.  Duty to Defend

The duty to defend an insured is broader than the duty to indemnify and is based on "*the potential for liability.*" *Woo v. Fireman's Fund Ins. Co.*, 161 Wn.2d 43, 52 (2007) (quoting *Truck Ins. Exch. v. VanPort Homes, Inc.*, 147 Wn.2d 751, 760 (2002)) (emphasis in *Woo*). "An insurer has a duty to defend when a complaint against the insured, construed liberally, alleges facts which could, if proven, impose liability upon the insured within the policy's coverage." *Id.* at 52-53 (internal quotation marks and quoted sources omitted). An insurer is not relieved of its duty unless the claim alleged is "clearly not covered by the policy." *Id.* at 60 (quoting *Truck Ins. Exch.*, 147 Wash.2d at 760). The duty to defend is triggered where a policy "*conceivably covers* the allegations in the complaint, whereas the duty to indemnify exists only if the policy *actually covers* the insured's liability." *Id.* at 53 (emphasis in original). The Court construes an ambiguous complaint liberally in favor of the duty to defend. *Id.* Where the duty to defend is uncertain, an insurer may, as here, provide defense under a reservation of rights and seek a declaratory judgment that it has no duty to defend. *Id.* at 54.

Because the underlying litigation is unresolved, the duty to defend is ongoing and the Court's review must generally be limited to "look[ing] at the 'eight corners' of the insurance contract and the underlying complaint." *Nat'l Union Fire Ins. Co. of Pittsburgh, PA v. Coinstar, Inc.*, 39 F. Supp. 3d 1149, 1156 (W.D. Wash. 2014). However, an insurer may look outside the complaint if the allegations are contradictory or ambiguous, or if coverage is unclear, but the insurer may only rely on extrinsic facts to *trigger* the duty to defend. *Grange Ins. Ass'n v. Roberts*, 179 Wn. App. 739, 752 (2013) (quoting *Woo*, 161 Wn.2d at 52-54).

*1.    Occurrence*

The Policies provide coverage for bodily injury that is caused by an "occurrence," which is defined as an "accident," during the covered period. The Policies do not define the term "accident." The parties here disagree as to whether C.L.'s claims in the Underlying Action can be construed as alleging any covered occurrence.

Where "accident" is not defined in an insurance policy, Washington courts look to the common law. *Lloyd v. First Farwest Life Ins. Co.*, 54 Wn. App. 299, 302 (1989) (citing *Detweiler v. J.C. Penney Casualty Ins. Co.*, 110 Wn.2d 99, 104 (1988)); *accord Roberts*, 179 Wn. App. at 755. Common law definitions of accident include "an unusual, unexpected, and unforeseen happening," and "a loss that happens without design, intent, or obvious motivation." *United Servs. Auto. Ass'n v. Speed*, 179 Wn. App. 184, 197-98 (2014) (quoting *Grange Ins. Co. v. Brosseau*, 113 Wn.2d 91, 95 (1989), and *Roller v. Stonewall Ins. Co.*, 115 Wn.2d 679, 685 (1990) (quoted source omitted), *overruled in part on other grounds by Butzberger v. Foster*, 151 Wn.2d 396 (2004)).

For purposes of liability insurance, "an accident is never present when a deliberate act is performed unless some additional unexpected, independent and unforeseen happening occurs which produces or brings about the result of injury or death. The means as well as the result must be unforeseen, involuntary, unexpected and unusual." *Safeco Ins. Co. of America v. Butler*, 118 Wn.2d 383, 401 (1992) (quoting *Detweiler,* 110 Wn.2d at 104). An act is deliberate when it is "done with awareness of the implications or consequences of the act." *Nationwide Ins. Co. v. Hayles, Inc.,* 136 Wn. App. 531, 538 (2007). "All that is required is that the claimant know or should know facts from which a prudent person would conclude that the injurious consequences are reasonably foreseeable." *Lloyd*, 54 Wn. App. at 302; *accord Roberts*, 179 Wn. App. at 756.

1  This inquiry involves an objective, not a subjective determination. *Speed*, 179 Wn. App. at 198

2  (citing *Roller*, 115 Wn.2d at 685).

3  Here, C.L. alleges abuse by the Langes, such as being struck with physical objects and

4  being deprived of food for multiple days as forms of punishment. Even construing C.L.'s

5  complaint liberally, these alleged acts of abuse and/or corporal punishment were not unexpected

6  as a prudent person could have reasonably foreseen that they could lead to injury. Further, it does

7  not appear there were any additional, independent, or unexpected happenings that brought about

8  the abusive conduct or produced C.L.'s injuries. Accordingly, the Langes' alleged abusive acts

9  do not constitute an occurrence.[3]

10  However, construing the complaint in the Underlying Action in the Langes' favor, as the

11  Court must do, it is conceivable that the Langes' alleged misrepresentations and omissions on

12  their foster care application and during the adoption process were "accidents" or "occurrences."

13  As asserted by the Langes, Carolyn Lange considered disclosing the prior sexual assault

14  allegations against Dillon but declined to do so after allegedly being told by DSHS that it was

15  unnecessary. (Resp. at 23.) It is possible this was a mistake or lapse in judgment, and that it was

16  not reasonably foreseeable or expected that it would result in injuries to C.L. Further, it is

17  conceivable that the Policies cover the allegations that Benjamin Lange failed to protect C.L.

18  from Carolyn Lange's abuse. Courts have previously found similar claims could be considered

19  an occurrence. *See Pac. Ins. Co. v. Catholic Bishop of Spokane*, 450 F. Supp. 2d 1186, 1198, 1205-

20  06 (E.D. Wash. 2006); *Western Protectors Insurance Company v. Shaffer*, 624 F. Supp. 2d 1292,

21  1299-300 (W.D. Wash. 2009).

---

[3] The Langes do not present argument regarding Benjamin Langes' alleged sexual molestation of C.L. The Court finds such alleged acts of sexual molestation do not constitute occurrences and therefore are not covered by the Policies.

REPORT AND RECOMMENDATION - 10

Accordingly, the Langes have failed to meet their burden regarding triggering a duty to defend C.L.'s claims of abuse and corporal punishment. The Court therefore recommends granting Travelers' motion for summary judgment on these claims. The Court, however, finds the Langes have met their burden of showing an "occurrence" for the claims regarding their alleged misrepresentations and omissions to DSHS and failure to protect to C.L.

        2.       *Sexual Molestation, Corporal Punishment, or Physical or Mental Abuse Exclusion*

Travelers asserts that even if the Court finds the Langes' conduct constitutes an "occurrence," coverage is excluded under the Policies. The Policies exclude coverage for bodily injury arising out of sexual molestation, corporal punishment, or physical or mental abuse. (Tokuyama Decl.*,* Ex. E at 29, 31.) Because these terms are undefined by the Policies, the Court turns to their ordinary meaning. *Boeing Co.*, 113 Wn.2d at 877 (1990). The dictionary defines the term "abuse" as "to use or treat so as to injure or damage: maltreat,"[4] and corporal punishment as "punishment that involves hitting someone: physical punishment."[5] Further, Washington courts find the meaning of the term "arising out of" to be unambiguous and "ordinarily means 'originating from', 'having its origin in', 'growing out of', or 'flowing from'". *Krempl v. Unigard Sec. Ins. Co., *69 Wn. App. 703, 707 (1993) (quoting *Toll Bridge Auth. Aetna Ins. Co,* 54 Wn. App. 400, 404 (1989)).

Travelers asserts the Langes' alleged conduct falls squarely under the terms of this exclusion. (Reply at 4.) It argues the Langes' actions, such as physically striking C.L., meets the

---

[4] https://www.merriam-webster.com/dictionary/abuse.

[5] https://www.merriam-webster.com/dictionary/corporal%20punishment.

REPORT AND RECOMMENDATION - 11

1  ordinary meaning of the exclusion's terms, and further, that there is no question that C.L.'s

2  injuries arose out of the Langes' abusive actions. (Mot. at 14-15; Reply at 5.)

3        The Langes argue this exclusion does not apply to Carolyn Lange's alleged conduct.

4  Specifically, they argue the exclusion can be reasonably interpreted to apply only to criminal-

5  type conduct, and her acts could be interpreted as parental discipline that falls outside the

6  criminal scope. (Resp. at 8.) In support of this argument, the Langes cite *Liberty Mut. Ins. Co. v.*

7  *Estate of Bobzien by & through Hart*, 377 F. Supp. 3d 723, 747 (W.D. Ky. 2019), *aff'd sub nom*,

8  for the proposition that at least one other court has recognized similar exclusion language is

9  ambiguous to the degree or level of conduct. (*Id.* at 9-10.) In *Estate of Bozien*, the policy did not

10  define the term "physical abuse." *Bozien*, 377 F.Supp. at 747. The court found the term was

11  susceptible to more than one reasonable ordinary meaning of physical maltreatment and could

12  reasonably have a criminal overtone because it was included with "sexual molestation, corporal

13  punishment, or physical or mental abuse" which often have criminal ramifications. (*Id.*) The

14  Langes also cite RCW 9A.16.100 which provides that "physical discipline of a child is not

15  unlawful when it is reasonable, moderate, and inflicted by a parent, teacher, or guardian for

16  purposes of correcting a child." (Resp. at 10, 12.) The Langes assert that in light of this authority,

17  there is a question of fact as to whether C.L.'s allegations rise to the level of corporal punishment

18  and abuse. (*Id.*)

19        As discussed above, the Court finds the Langes' alleged abuse and corporal punishment

20  of C.L. do not constitute occurrences. In addition, it is unclear when this alleged conduct

21  occurred and thus it is unclear if it falls within the policy period. However, even if the allegations

22  of abuse and corporal punishment were considered covered occurrences, they would be excluded

23  from coverage by operation of this exclusion. The Court reads the terms of the Policies within a

fair, reasonable, and sensible construction. Looking at the plain meaning of the terms, the exclusion contains no restriction to criminal-type conduct. This interpretation of the Policies is supported by the fact that other exclusions in the Policies specifically identify criminal conduct, such as the exclusion for personal injury "caused by a violation of penal law." (*See* Tokuyama Decl., Ex. E at 9.) No such reference to criminal conduct is included in this exclusion and the Court declines to read in a criminal requirement. Further, although the Langes characterize Carolyn Lange's conduct as mere parental discipline, C.L.'s allegations of abuse and physical punishment meet the ordinary, common meaning of the terms of this exclusion and her alleged bodily injuries clearly arose out of, or flowed from, the Langes' alleged abusive actions. Accordingly, the Court recommends granting Travelers' motion for summary judgment regarding the claims of abuse and corporal punishment based on this exclusion.

The Court notes that the Langes also argue this exclusion does not bar coverage because some of C.L.'s allegations include conduct outside the scope of abuse and corporal punishment, such as their alleged misrepresentations and omissions during the foster and adoption process and Benjamin Lange's failure to protect C.L. from Carolyn Lange's abuse. (Resp. at 9-10.)[6] The Langes argue that because at least some of C.L.'s claims fall outside the scope of the exclusion, the duty to defend exists. (*Id*. at 10.) The Court finds the alleged misrepresentations and omissions, as well as the alleged failure to protect, conceivably do not rise to the level of abuse or corporal punishment, and therefore coverage would not be barred by this exclusion. However, as discussed below, other exclusions provided in the Policies exclude coverage for these claims.

---

[6] The Langes do not argue the allegation that Benjamin Lange touched C.L.'s breasts while she slept falls outside this exclusion. As noted above, the Court finds his actions do not constitute a covered occurrence. However, even if it was a covered occurrence, the Court recommends Travelers' motion for summary judgment be granted as to this claim based on this exclusion.

REPORT AND RECOMMENDATION - 13

C.L. further alleges other claims that may not rise to the level of abuse or corporal punishment, such as Carolyn Lange's failure to believe C.L.'s disclosure of her sexual abuse and the discarding of C.L.'s belongings. However, it is apparent from the record that this conduct occurred after 2005 and therefore does not fall within the policy period. As noted above, C.L. did not move out until she was a teenager and C.L. did not disclose the sexual abuse to Carolyn Lange until 2011. (Neal Decl., Ex. A at 7.) Accordingly, the Court recommends that Travelers' motion for summary judgment with regard to these claims be granted.

        a.    *Efficient Proximate Cause Rule*

The Langes further assert their alleged misrepresentations and omissions during the foster care and adoption process, which occurred during the policy period and are not excluded by any of the Policies' terms, were the efficient proximate causes of C.L.'s injuries, and therefore any subsequent excluded abuse is covered. Washington follows the "efficient proximate cause" rule of causation in the insurance context. *Graham v. Pub. Emp. Mut. Ins. Co.,* 98 Wn.2d 533, 538 (1983). This rule provides that "where a peril specifically insured against sets other causes into motion which, in an unbroken sequence, produce the result for which recovery is sought, the loss is covered, even though other events within the chain of causation are excluded from coverage." *McDonald,* 119 Wn.2d at 731 (citing *Graham,* 98 Wn.2d at 538). In other words, "where an insured risk itself sets into operation a chain of causation in which the last step may have been an excepted risk, the excepted risk will not defeat recovery." *Villella v. Public Employees Mut. Ins. Co.,* 106 Wn.2d 806, 815 (1986). "[I]f the efficient proximate cause is a covered peril, then the exclusions have no effect." *Northwest Bedding Co. v. Nat'l Fire Ins. Co. of Hartford,* 154 Wn. App. 787, 795 (2010). It is the predominate cause which sets into motion the chain of events producing the loss which is regarded as the proximate cause. *Graham*, 98 Wn.2d at 538.

The Langes assert their alleged misrepresentations and omissions are the initial link in the causal chain that led to C.L.'s abuse and the resulting injuries because, but-for these acts, C.L. would not have been placed in the Lange household. (Resp. at 12-16.) In support of their assertion, the Langes cite *Xia v. ProBuilders Specialty Ins. Co.*, 188 Wn.2d 171 (2017). In *Xia*, negligent installation of a hot water heater caused the release of toxic levels of carbon monoxide into a home. *Xia*, 188 Wn.2d at 174. Although the insurance policy contained a broad exclusion for bodily injury caused by a pollutant "regardless of the cause of the pollution or pollutants," the Washington Supreme Court found that because the complaint's allegations "provided a reasonable and conceivable basis to believe that the negligent installation of the hot water heater, itself a covered occurrence under the policy provisions, set in motion a causal chain wherein the venting of exhaust lowered the oxygen content of the room such that a normally nonpolluting appliance began discharging toxic levels of carbon monoxide fumes" the insurer had a duty to defend. *Id.* at 184, 189.

Travelers asserts the efficient proximate cause rule is inapplicable. Travelers argues the only claims against the Langes remaining in the Underlying Action regard the Langes' abuse, and that the only cause of that abuse was the abusive physical and mental acts of the Langes. (Reply at 7 (citing *Kish v. Ins. Co. of N. Am.*, 125 Wn.2d 164, 170 (1994) ("When, however, the evidence shows the loss was in fact occasioned by only a single cause, albeit one susceptible to various characterizations, the efficient proximate cause analysis has no application. An insured may not avoid a contractual exclusion merely by affixing an additional label or separate characterization to the act or event causing the loss.")).)

Travelers also argue that even if some alleged conduct falls outside direct abuse by the Langes, that conduct was not the predominate cause which set in motion the occurrence of C.L.'s

loss, as required. (Reply at 8 (citing *Graham*, 98 Wn.2d at 538).) Travelers asserts C.L.'s alleged injuries were instead predominantly caused by the abusive acts of the Langes, and that the abuse was not the natural and eventual consequence of misrepresenting or omitting information about Dillon during the foster care and adoption process. (*Id.*)

Lastly, Travelers argues the efficient proximate cause rule does not superseded the plain and ordinary meaning of the term "arising out of" in the Policies. (Reply at 8.) Travelers notes the *Xia* court applied the efficient proximate cause to an exclusion for injury "caused by" release of pollutants whereas the language in the instant matter excludes injury that "arises out of" abuse and corporal punishment. (*Id.* at 8-9.) Travelers also asserts *Xia* is distinguishable because it involved a commercial general liability policy, not a personal lines policy like the Policies at issue in the instant matter. (*Id.* at 9.)

Here, the Court finds the Langes' alleged act of misrepresenting and omitting information to DSHS regarding Dillon was not the efficient proximate cause of C.L.'s injuries. Although the misrepresentations and omissions may have allowed the Langes to foster and adopt C.L., it does not naturally follow that bringing C.L. into their household caused the Langes to abuse her. The alleged abuse and corporal punishment were deliberate acts taken by the Langes, which they could have chosen to not take despite having already made misrepresentations and omissions to DSHS about their son. Therefore, the misrepresentations and omissions did not set into motion an unbroken sequence leading to C.L.'s injuries, and were not the efficient proximate cause of those injuries.

### 3. Insured

Alternatively, Travelers argues that the Policies do not provide coverage for bodily injury to an "insured" and that, during the relevant time period, C.L. was an insured. As noted above,

the Policies define an insured as "you and residents of your household who are: **a.** Your relatives; or **b.** Other persons under the age of 21 and in the care of any person named above." (Tokuyama Decl., Ex. E at 16 (emphasis in original).)

The Langes argue that in determining whether an individual is a resident for insurance policy purposes, Washington courts consider a multifactor test that includes the following factors:

> (1) the person was living there; (2) the person had a close, intimate, informal relationship with those living at the home; (3) the person had other lodging; and (4) the stay is temporary or permanent.

(Resp. at 15-16 (citing *Dautel v. United Pac. Ins. Cos.*, 48 Wn. App. 759, 766 (1987)).) The Langes concede that after C.L.'s adoption in 2004, C.L. was a resident of their household and therefore an "insured" under the Policies, however, they argue C.L. was not a resident when she was their foster child. (*Id*. at 17-18.) Relying on the factors outlined in *Dautel*, the Langes assert questions of fact remain regarding C.L.'s intent to live with the Langes permanently, the subjective relationship between C.L. and the Langes, and DSHS's intent regarding the duration of C.L.'s stay with the Langes. (*Id*. at 17.) In support of their argument, the Langes cite *Risk Mgmt. Div., Gen. Servs. Dep't of State ex rel. Apodaca v. Farmers Ins. Co. of Arizona*, 134 N.M. 188, 189, 194 (N.M. Ct. App. 2003), in which the court found more facts were needed to determine whether a foster child qualified as a resident when the child was placed in the foster home for only long-term care and had a plan to return to his parents. (*Id.* (citing *Apodaca*, 134 N.M. at 189, 194).) The Langes assert that because questions in the instant matter remain regarding when C.L. became a resident—and therefore an insured—summary judgment must be denied. (*Id*. at 17-18.)

Travelers asserts policy interpretation calls for the Court to utilize the dictionary definition of "resident," and argues C.L.'s placement in the Langes' household clearly fits that

REPORT AND RECOMMENDATION - 17

definition. (Reply at 9-10.) The dictionary defines "resident" as one "living in a place for some length of time" or "one who resides in a place," and "reside" is defined as "to dwell permanently or continuously: occupy a place as one's legal domicile."[7] Travelers asserts C.L.'s foster placement with the Langes meets this definition because there is no evidence that C.L. moved out of the Lange household between 2002 and 2005, and instead argues the evidence suggests she continuously lived with the Langes until at least 2013. (*Id.*) Travelers also notes that the *Adopaca* policy language differs from the Policies' language in this matter as the *Apodaca* policy defined insured as "… permanent residents of your household" whereas the Policies state "residents of your household." (*Id.* at 11) Further, the *Apodaca* policy excluded bodily injury to any "resident of the residence premises …" unlike the Policies' exclusion of bodily injury to "an insured." (*Id.*)

      The Court finds C.L. was a resident of the Lange household and a minor in the care of the Langes during the entire policy period. C.L. was placed in the Lange household as a foster child in 2002 and remained there through her adoption in 2004, and thereafter throughout the policy period. Although the Langes speculate as to the intent of C.L. and DSHS, the evidence in the record shows C.L. continuously lived at the residence, had a foster child-parent relationship with the Langes, had no other lodging, and lived with the Langes well into her teenage years. The facts of this matter are distinguishable from those in *Dautel*, in which the individual in question visited an out-of-state relative. In that matter, the individual had his own lodging in his home state, only intended to stay with the relative during a ten-day vacation, and slept on the relative's sofa bed during his stay. *Dautel*, 48 Wn. App. at 760, 766. Here, even the Langes assert Carolyn Lange "fell in love with C.L. and her sister" and thought the Langes could provide them a better

---

[7] https://www.merriam-webster.com/dictionary/resident; https://www.merriam-webster.com/dictionary/reside.

life. (Resp. at 3.) Under either the multifactor test or the dictionary definition, the Court finds C.L. was a resident of the Lange household during the policy period and therefore qualified as an "insured." Accordingly, the Court recommends granting Travelers' motion for summary judgment regarding all claims in the Underlying Action based on this exclusion.

### 4. Intended or Expected Exclusion

As discussed above, the Court finds C.L.'s claims of abusive conduct against the Langes do not constitute covered occurrences and therefore do not trigger the duty to defend, and, even if they did, coverage would be barred by the exclusion for bodily injury arising out of corporal punishment and abuse. Further the Court finds that these claims, as well as C.L.'s remaining allegations against the Langes, are barred by the Policies' exclusion for bodily injury to an "insured." Thus, the Court finds Travelers' motion for summary judgment should be granted. Accordingly, the Court need not address the argument regarding whether the Polices' exclusion of coverage for bodily injury that is expected or intended by one or more insured applies.

### D. Duty to Indemnify

The duty to indemnify "hinges on the insured's actual liability to the claimant and actual coverage under the policy." *Woo*, 161 Wn.2d at 53 (2007) (citing *Hayden v. Mut. of Enumclaw Ins. Co.*, 141 Wn.2d 55, 64 (2000)). "The duty to indemnify exists only if the insurance policy actually covers the insured's liability." *Xia,* 188 at 182. Here, the Court recommends granting Travelers' motion for summary judgment regarding its duty to defend because the claims against the Langes in the Underlying Action either do not qualify as covered occurrences or are excluded from coverage by operation of an exclusion. Because there is no coverage under the Policies, a ruling on indemnity is appropriate at this time. Accordingly, the Court recommends granting

Travelers' motion for summary judgment on indemnity.

## IV. CONCLUSION

Based on the foregoing, the Court recommends that Travelers' motion for summary judgment on declaratory judgment (dkt. # 17) be GRANTED. The Court recommends entry of a declaratory judgment that Plaintiff owes no defense or coverage obligations to Carolyn and Benjamin Lange for the claims asserted against them in the Underlying Action, *C.L. v. Carolyn and Benjamin Lange*, Whatcom County Superior Court Case No. 17-2-02207-8, under the insurance policies issued to them by Plaintiff, Policy No. 947122960 633 1, which were in effect between January 1, 2002 and January 1, 2005. A proposed order accompanies this Report and Recommendation.

Objections to this Report and Recommendation, if any, should be filed with the Clerk and served upon all parties to this suit within **fourteen (14) days** of the date on which this Report and Recommendation is signed. Failure to file objections within the specified time may affect your right to appeal. Objections should be noted for consideration on the District Judge's motions calendar for the third Friday after they are filed. Responses to objections may be filed within **fourteen (14) days** after service of objections. If no timely objections are filed, the matter will be ready for consideration by the District Judge on October 14, 2020.

The Clerk is directed to send copies of this Report and Recommendation to the parties and to the Honorable James L. Robart.

Dated this 29th day of September, 2020.

MICHELLE L. PETERSON
United States Magistrate Judge